UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

Case No.:

CARA Z., A MINOR CHILD,

Plaintiff,

vs.

CIGNA HEALTH AND LIFE INSURANCE COMPANY,

Defendant.
_________________________________/

# COMPLAINT

Plaintiff, CARA Z., by and through her undersigned counsel, files this Complaint against Defendant, CIGNA HEALTH AND LIFE INSURANCE COMPANY ("CIGNA"), and states as follows:

## Jurisdiction, Venue & Parties

1. This action is brought under 29 U.S.C. §§ 1132(a), (e), (f) and (g) of the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA") as it involves a claim by Plaintiff for employee benefits under an employee benefit plan regulated and governed under ERISA.

2. This Court has jurisdiction pursuant to 28 U.S.C. §1331 and specifically 29 U.S.C. §1132(e). This matter involves a federal question and is brought for the purpose of obtaining benefits under the terms of an employee benefit plan, enforcing Plaintiff's rights under the terms of an employee benefit plan, and to clarify Plaintiff's rights to future benefits under the employee benefit plan. Plaintiff seeks relief, including but not limited to: payment of benefits, prejudgment and post-judgment interest, and attorneys' fees and costs.

3. Venue is proper pursuant to 28 U.S.C. §1391 and specifically 29 U.S.C. §1132(e)(2), because an action may be brought in the district where the plan is administered, where the breach took place, or where the defendant resides or may be found. Both the breach occurred and Defendant may be found in this judicial district.

4. At all relevant times herein, Plaintiff, CARA Z., has been a resident and citizen of the state of Florida.

5. Plaintiff is informed and believes that Sentry Data Systems, Inc. Plan is an employee welfare benefit plan established and maintained pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §1001, *et seq.* Annexed hereto as Exhibit 1 is a document that Defendant produced to Plaintiff, which it purported to be a true and correct copy of the applicable Sentry Data Systems, Inc. Plan (hereinafter the "Plan").

6. Plaintiff is informed and believes that Sentry Data Systems, Inc., is a corporation with its principal place of business in the State of Florida, and is authorized to transact and is transacting business in the Southern District of Florida, and can be found in the Southern District of Florida.

7. Plaintiff is informed and believes that CIGNA is a corporation with its principal place of business in the state of Connecticut, and is authorized to transact and is transacting business in the Southern District of Florida, and can be found in the Southern District of Florida.

8. At all relevant times herein, CARA Z. was a beneficiary, within the meaning of 29 U.S.C. §1002 (8), in the Plan delivered to Sentry Data Systems, Inc., which is insured and underwritten by Defendant, CIGNA, who does business in the State of Florida.

9. At all relevant times herein, CARA Z. was a covered dependent of a participant of the Plan and pursuant to the Plan Plaintiff is and was entitled to health care benefits.

10. At all relevant times herein, CIGNA pays claims under the Plan from its own general assets, makes the final determination to pay or deny claims under the Plan, and is a for-

profit corporation, and as such operates under an inherent financial conflict of interest in administering claims.

11. Prior to filing this present action, CARA Z. has fulfilled all conditions precedent, including the exhaustion of administrative remedies and/or the exhaustion of such administrative remedies is excused.

## GENERAL ALLEGATIONS

Plaintiff incorporates by reference paragraphs 1 through 11 as though fully set forth herein.

12. As a beneficiary in the Plan, Plaintiff is entitled to receive insurance coverage for mental health treatment that is medically necessary under the terms of the Plan.

13. The Plan includes, but is not limited to, the following relevant provisions:

> **Definition of Medically Necessary or Medical Necessity:**
> **"**In considering coverage for any level of care, all elements of Medical Necessity must be met as specifically outlined in the individual's benefit plan documents. Although benefit plan definitions of Medical Necessity/Medically Necessary vary to some degree, they commonly require the service or supply to be:
>
> - In accordance with the generally accepted standards of medical practice;
> - Clinically appropriate, in terms of type, frequency, extent, site and duration, and considered effective for the patient's illness, injury or disease; and
> - Not primarily for the convenience of the patient or Physician, and not more costly than an alternative service or sequence of services at least as likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of that patient's illness, injury or disease."
>
> **Description of a Partial Hospitalization treatment:**
> "Partial Hospitalization for Eating Disorders provides a coordinated, intense, ambulatory, multi-disciplinary and time

limited treatment for individuals who can maintain personal safety with support systems in the community.

- Treatment provided in this setting is similar in nature and intensity as that provided in an inpatient hospital setting. As such, the role of this level of care is to respond to acute situations, which without this level of care, could potentially result in life-threatening emergencies.
- Cigna agrees with the following principles, as stated by the Association for Ambulatory Behavioral Healthcare (AABHH):
    - o "Partial hospitalization programs (PHP's) are active, time-limited, ambulatory behavioral health treatment programs that offer therapeutic intensive, structured, and coordinated clinical services within a stable therapeutic milieu.""

14. In 2011, CARA Z. started to suffer from severe and dangerous symptoms of an eating disorder, Anorexia Nervosa, Purging Type.

15. In 2013, Plaintiff was hospitalized after a suicide attempt in which she was treated at the ICU for three days and subsequently received treatment in a psychological ward for three days.

16. Plaintiff has received various levels of treatment including residential, partial hospitalization ("PHP"), intensive outpatient ("IOP"), inpatient medical and psychiatric treatment at four different facilities specializing in eating disorders.

17. During her stay at one of the residential programs, after not eating for three days, CARA Z. had to be transferred to a medical facility due to medical complications related to her eating disorder.

18. Prior to the latest hospitalization, CARA Z. was under the care of an outpatient treatment ("OP") team, which included her psychiatrist, Dr. Christi Rogers ("Dr. Rogers"), and nutritionist Alice Baker.

19. After one year of OP treatment, CARA Z.'s symptoms spiraled dangerously out of control, and by the end of May, 2015, she was severely restricting her food intake to less than 500 calories, significantly over-exercising, engaging in food rituals, experiencing constant and overwhelming severe depression and anxiety, and continuously engaging in self-induced vomiting up to seven times a day.

20. To mask her hunger and exhaustion, CARA Z. consumed caffeine, and engaged in excessive exercising every time she felt hunger.

21. It was Dr. Rodger's professional medical opinion that CARA Z.'s OP treatment was not sufficient to control her symptoms, her treatment needed to be intensified, and that CARA Z. required the constant supervision of Residential Treatment given the severity of her condition and her dangerous eating disorder behaviors. Accordingly, he opined that it was medically necessary for CARA Z. to be treated at the Residential level of care.

22. At or about this time, CARA Z.'s family began to research various treatment facilities.

23. On June 1, 2015, CARA Z. was assessed for the treatment at Oliver-Pyatt Centers ("OPC"), an eating disorder treatment facility.

24. OPC determined residential treatment was medically necessary to treat CARA Z.'s Anorexia Nervosa, Purging Type, Major Depressive Disorder, and Anxiety Disorder, which was consistent with the opinions of her treating psychiatrist and her nutritionist.

25. CARA Z. was admitted to OPC on June 1, 2015, and continued to receive treatment through January 25, 2016.

26. During her time at OPC, CARA Z. received health care services that were medically appropriate and necessary, and consistent with scientifically based guidelines of national medical, research, and health care coverage organizations and governmental agencies.

27. During her time at OPC, CARA Z. received health care services that were consistent with her diagnosis, and were required for reasons other than convenience for her or her physician, as demonstrated by the opinions of her outpatient team, and her intake and treating therapists at OPC.

28. During her time at OPC, CARA Z. received health care services that were safe and effective for treating her condition and allowed significant daily opportunities for her to practice her coping skills when confronted by the community, home, school, and workplace circumstances that may have contributed to her eating disorder.

29. At no time during her stay at OPC has Plaintiff been in a more restrictive level of treatment than was medically necessary for her condition.

30. CARA Z. attended OPC's residential treatment program from June 1, 2015 through June 30th, 2015, throughout which time, residential treatment was medically necessary.

31. CARA Z. was then stepped down to OPC's Partial Hospitalization Program level of care ("PHP") from July 1, 2015 through October 5, 2015 throughout which time PHP level of care was medically necessary.

32. OPC's PHP level of care meets industry standards as an ambulatory behavioral health treatment program, and allows patients to develop and practice coping skills in the community.

33. Between July 1, 2015 through October 5, 2015, Defendants were obligated to make payment under the health benefit contract for Plaintiff's PHP treatment received at OPC to OPC, located in Dade County, Florida.

34. Between the dates of July 1, 2015 through August 25, 2015, Defendant approved and submitted payment to OPC for CARA Z.'s PHP level of care, thereby agreeing and establishing that OPC's PHP meets industry standards.

35. As of August 26, 2015, CIGNA denied further coverage for CARA Z.'s PHP level of care treatment, originally asserting that the PHP level of care was no longer medical necessary to treat CARA Z.'s eating disorder.

36. CARA Z.'s treatment team appealed CIGNA's denial. However, CIGNA continued to deny coverage for PHP level of care treatment at OPC, retiring its original rationale for denial and subsequently asserting that the very same PHP program at OPC that it previously approved did not meet industry standards for a PHP eating disorder program.

37. Before, at the time of, and after CIGNA's denial of further coverage for CARA Z.'s PHP level of care treatment based on its' assertion that the OPC PHP level of care program does not meet industry standards, CIGNA approved coverage and paid benefits to OPC for PHP level of care treatment provided to other patients, establishing that OPC's PHP program meets industry standards.

38. CARA Z.'s treatment team at OPC continued to opine that she required treatment at the PHP level of care to treat her eating disorder. Given the severity of her condition, CARA Z. remained in the PHP program at OPC, paying out of pocket, following Cigna's denial of further coverage.

39. On or about October 6, 2015, it was determined by CARA Z.'s treatment team that it was medically necessary for CARA Z. to receive treatment for her eating disorder at the Intensive Outpatient Program ("IOP") level of care. Accordingly, Plaintiff transitioned from OPC's PHP level of care program to its' IOP level of care program.

40. CARA Z. received treatment at the IOP level of care from October 6, 2015 through January 25, 2016, throughout which time her IOP treatment was medically necessary. Defendant approved payment for the treatment rendered to CARA Z. at the IOP level of care between the dates of October 6, 2015 through January 25, 2016, but to date has not remitted payment to OPC for the approved treatment dates of November 9, 2015 through November 13, 2015 and December 1st, 2015 through January 25, 2016.

41. CARA Z. was discharged from OPC on or about January 25, 2016.

42. CARA Z. sought coverage from CIGNA for her treatment as a participant in the Plan. However, Defendants have wrongfully denied and unreasonably withheld benefits owed under the Plan, causing Ms. CARA Z. to incur substantial financial and emotional hardship.

43. CARA Z. submitted all mandatory administrative appeals of Defendant's adverse coverage determinations, all of which have been upheld by Defendant.

44. As of the date of the filing of this lawsuit, Defendant has failed and refuses to pay for Plaintiff's medically necessary PHP level of care treatment at OPC despite CARA Z. exhausting all of her administrative remedies and satisfying all conditions precedent entitling her to coverage under the Plan.

45. CARA Z. has performed all conditions precedent to the filing of this lawsuit.

## FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS
**Action to Recover Plan Benefits, Enforce Rights Under the Plan, And Clarify Entitlement to Plan Benefits Pursuant to 29 U.S.C (a)(1)(B)**

Plaintiff incorporates by reference paragraphs 1 through 46 as though fully set forth herein.

46. Defendants wrongfully denied Plaintiff's claim for benefits, in the following respects:

(a) Failure to pay and/or approve mental health treatment benefit payments due to Plaintiff at a time when Defendants knew, or should have known, that Plaintiff was entitled to those benefits under the terms of the Plan;

(b) Failure to provide prompt and reasonable explanations of the bases relied on under the terms of the Plan documents, in relation to the applicable facts and Plan provisions, for the denial of the claim for medical benefits;

(c) After the claims were denied in whole or in part, failure adequately describe to Plaintiff any additional material or information necessary to perfect the claim along with an explanation of why such material is or was necessary;

(d) Failure to properly and adequately investigate the merits of the claim; and

(e) Failing to employ appropriate procedures and safeguards to ensure that it was deciding similarly situated claims, under similar circumstances, in a consistent manner, and specifically deciding Plaintiff's claims in a manner inconsistent with its past determinations with respect to Plaintiff's previous benefit claims and with respect to other similarly situated claimants' benefit claims.

46. Plaintiff is informed and believes and thereon alleges that Defendant wrongfully denied her claims for benefits by other acts or omissions of which Plaintiff is presently unaware, but which may be discovered in this litigation and of which Plaintiff will immediately make Defendants aware once said acts or omissions are discovered by Plaintiff.

47. Following the denial of the claims for benefits under the Plan, Plaintiff exhausted all administrative remedies required under ERISA, and performed all conditions precedent to the filing of this lawsuit.

48. As a proximate result of the denial of medical benefits, Plaintiff has been damaged in the amount of the medically necessary treatment received.

49. As a further direct and proximate result of this improper determination regarding the benefit claims, Plaintiff, in pursuing this action, has been required to incur attorneys' fees and costs. Pursuant to 29 U.S.C. § 1132(g) (1), Plaintiff is entitled to have such fees and costs paid by Defendants.

50. Due to the wrongful conduct of Defendant, Plaintiff is entitled to enforce her rights under the terms of the Plan and to clarify her rights to future benefits under the terms of the Plan.

WHEREFORE, Plaintiff, CARA Z., prays for judgment against Defendant CIGNA BEHAVIORAL HEALTH, INC., as follows:

a. Payment of all past health insurance benefits due to Plaintiff under the Plan;

b. Payment of prejudgment and post-judgment interest as allowed for under ERISA at the lawful rate;

c. A mandatory Injunction and Declaration requiring Defendants to immediately qualify Plaintiff for mental health treatment benefits due and owing under the Plan;

d. Pursuant to 29 U.S.C. § 1132(g), payment of all costs and attorneys' fees incurred in pursuing this action; and

e. For such other and further relief as the Court deems just and proper.

Respectfully submitted this _8th__ day of March 2016.

DI LAW GROUP
Attorneys for Plaintiff
4151 Hollywood Boulevard
Hollywood, Florida 33021
Tel: (954) 989-9000
Fax: (954) 989-9999

/s/ Alicia Paulino-Grisham
Alicia Paulino-Grisham
Florida Bar No.: 0676926
E-mail: alicia@dilawgroup.com

/s/ Maggie M. Smith
Maggie M. Smith
Florida Bar No.: 023510
E-mail: maggie@dilawgroup.com